Robert M. Dombroff
Timothy J. Stephens
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, New York 10022-4689
(212) 705-7000

*Attorneys for Plaintiff*
*Weiss Family Art (Bacon) LLC*

JUDGE MARRERO

09 CIV 2598

RECEIVED MAR 20 2009 U.S.D.C. S.D.N.Y. CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

WEISS FAMILY ART (BACON) LLC,

    Plaintiff,

  - against -

CHRISTIE'S INC.,

    Defendant.

------------------------------------------------------------ X

Case No.

**COMPLAINT**

(JURY TRIAL DEMANDED)

Plaintiff Weiss Family Art (Bacon) LLC ("WFA" or "Plaintiff"), by its attorneys, Bingham McCutchen LLP, complaining of defendant Christie's Inc. ("Christie's" or "Defendant"), alleges as follows:

### Nature of the Action

1. Plaintiff is the owner of a painting by the celebrated artist Francis Bacon, entitled *Study for Self Portrait* (1964) (the "Property"). In July 2008, Christie's offered WFA's managing member, George A. Weiss ("Weiss"), a guaranteed minimum price of $40 Million in order to induce Weiss and WFA to place the Property for auction in connection with Christie's November 2008 Post War and Contemporary Art sale. Despite Weiss's and WFA's acceptance of Christie's offer, Christie's receipt and acceptance of delivery of the Property and Christie's

actions taken in furtherance of marketing the Property in connection with the auction, Christie's reneged upon the minimum price guarantee and has failed and refused to pay WFA any part of the guaranteed minimum price. In this action, WFA seeks recovery of the $40 Million guaranteed minimum price from Christie's.

### Jurisdiction and Venue

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

3. Based upon the citizenship of its members, Plaintiff is a citizen of Florida and California for the purposes of diversity jurisdiction.

4. Based upon its state of incorporation and its principal place of business, Defendant is a citizen of New York for the purposes of diversity jurisdiction.

5. Venue is proper in this judicial district pursuant 28 U.S.C. § 1391(a) because Defendant is resident in this district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

### The Parties

6. Plaintiff WFA is a Delaware limited liability company having its principal place of business in Hartford, Connecticut.

7. At all relevant times, Weiss has been the managing member of WFA and has had the right and power to manage and operate the business of WFA and to do all things necessary to carry on the business of WFA, including the sale, conveyance or disposition of the Property. Weiss is a United States citizen and is a citizen, domiciliary and resident of the State of Florida.

8. At all relevant times, the other members of WFA have been Weiss's two daughters, Deborah L. Weiss and Allison Weiss Brady. Deborah L. Weiss is a United States citizen and is a citizen, domiciliary and resident of the State of California. Allison Weiss Brady is a United States citizen and is a citizen, domiciliary and resident of the State of Florida.

9. Upon information and belief, defendant Christie's is a New York corporation having its principal place of business in New York, New York.

### Factual Background

#### *Francis Bacon*

10. Francis Bacon (1909-1992) was an Irish-born artist known for producing bold and provocative works. Leading art critic Robert Hughes recently described Bacon as "the toughest, the most implacable, lyric artist in late 20th-century England, perhaps in all the world." Robert Hughes, *Horrible!*, The Guardian, August 30, 2008.

11. In the past several years, works by Francis Bacon have commanded very high prices. According to published accounts, in June 2007, a 1978 Bacon self-portrait sold for more than $42 Million at Sotheby's in London. Another Bacon work, a 1976 triptych, sold for more than $86 Million at Sotheby's in New York in May 2008.

#### *Minimum Price Guarantees*

12. For years, the major auction houses, including Christie's and Sotheby's, have offered guaranteed price arrangements for select works in order to bring major pieces to market.

13. Under guaranteed price arrangements, the auction house and the seller agree on a minimum price for the work. The auction house must pay the seller the minimum price, whether or not the work is sold, and regardless of the price at which the work is sold. If

A/72845390.5/0202038-0000335526

the work is not sold, the auction house becomes the owner. *See* 1 Ralph E. Lerner and Judith Bressler, *Art Law* 340-341 (3rd ed. 2005).

### *Christie's and Sotheby's Vie for the Property*

14. Upon information and belief, Christie's is one of the world's largest art auction houses. Its primary competitor is Sotheby's.

15. Christie's holds itself out as "the world's leading art business" and as a "name and place that speaks of extraordinary art, unparalleled service and expertise, as well as international glamour."

16. In July 2008, teams from both Christie's and Sotheby's made personal pitches to Weiss to put the Property up for auction in connection with their respective Fall 2008 sales.

17. On or about July 23, 2008, Christie's representatives Christopher Burge (Christie's honorary chairman and lead auctioneer), Marc Porter (Christie's president), Laura Paulson (deputy chairman, senior vice president and international director, Postwar and Contemporary Art), Brett Gorvy (co-head and deputy chairman of Postwar and Contemporary Art) and Guy Bennett (co-head of Impressionist and Modern Art) met with Weiss to discuss the Property.

18. In the wake of the meeting, Christie's representatives made a proposal to Weiss concerning the sale of the Property, which proposal included an option, at the election of Weiss, of a substantial minimum price guarantee.

19. At or about the same time, Sotheby's representatives also made a proposal to Weiss for the sale of the Property, including an option, at the election of Weiss, of a substantial minimum price guarantee.

A/72845390.5/0202038-0000335526

### *Christie's $40 Million Minimum Price Guarantee*

20. After further discussion between Christie's and Weiss, and in order to improve its chances of winning the competition for the Property, Christie's improved its offer on the Property on or about July 28, 2008. The improved offer was communicated to Weiss through Christopher Burge.

21. The improved offer from Christie's (the "Offer") consisted of two options, with the choice to be at Weiss's election: (i) <u>Option 1</u>: A $40 Million guaranteed minimum price to seller, plus a 3% "enhanced hammer" premium whereby seller would receive 103% of the sales price, or "hammer price," for a sale above $40 Million, with the 3% enhancement to cease after $50 Million, and a 90%/10% split between seller and Christie's of any sales proceeds in excess of $50 Million; and (ii) <u>Option 2</u>: Seller would receive 108% of the sales price, with no minimum price guarantee.

22. Christie's memorialized the Offer in a written presentation to Weiss, which described the terms of the Offer and set forth the net proceeds that would be realized by seller under a range of prospective sales prices at auction.

23. Christie's allowed Weiss until at least mid-September 2008 to elect between the options embodied in the Offer.

### *Weiss's Acceptance of Christie's Offer*

24. In late July 2008, Weiss accepted the Offer by communicating same to Christie's.

25. At or around the same time, Weiss informed Sotheby's that despite Sotheby's attractive offer for the Property, Weiss and WFA were going with Christie's for the auction of the Property.

A/72845390.5/0202038-0000335526

26. In early August 2008, Christie's contacted Weiss to take delivery of the Property. At that time, and before transferring possession of the valuable Property, Weiss sought reassurance from Christie's that there was an agreed upon deal between the parties. Christie's, through Christopher Burge, assured Weiss that Christie's standard operating procedure was to come to an agreement on the terms of a deal just as the parties had done, and that "papering" the parties' agreement was a mere formality. Weiss was assured that he had nothing to worry about: Weiss and Christie's had a deal.

27. On August 7, 2008, after providing Weiss with the assurance that the parties had a deal, Christie's arranged for and took delivery of the Property.

28. Upon information and belief, after taking delivery of the Property, Christie's proceeded to take photographs of the Property and to take other actions in connection with marketing the Property for Christie's November 12, 2008 Post War and Contemporary Art sale in New York City.

29. On or about August 25, 2008, after consulting with Christopher Burge, Weiss elected the $40 Million guarantee option and informed Christie's of that election.

30. On or about August 26, 2008, Christie's sent Weiss a consignment agreement, which memorialized the terms of the agreed-upon guaranteed minimum price option; *i.e.*, a $40 Million guaranteed minimum price to seller, plus a 3% "enhanced hammer" premium whereby seller would receive 103% of the sales price, or "hammer price," for a sale above $40 Million, with the 3% enhancement to cease after $50 Million, and a 90%/10% split between seller and Christie's of any sales proceeds in excess of $50 Million.

31. Weiss's representatives provided some comments on the consignment agreement and Christie's circulated a revised copy on September 11, 2008, in both a black-lined

A/72845390.5/0202038-0000335526

form and "a clean copy that is ready for signature." Christie's noted that it had "tweaked" the language of the section dealing with the 3% enhanced hammer price, in order to make sure that it accurately "reflect[ed] the deal."

32. Weiss, by his and WFA's art agent, Ivor Braka, executed the clean, "ready for signature" copy of the agreement and returned it to Christie's.

33. On September 16, 2008, Christie's was notified that a fax copy of the executed consignment agreement was on its way to Christie's from Weiss's art agent. Christie's notified Weiss's representatives and his art agent that all was well, and on September 18, 2008 requested original counterparts of the consignment agreement. The original counterparts of the consignment agreement were delivered to Christie's on or before September 23, 2008.

### *Christie's Reneges on the $40 Million Minimum Price Guarantee*

34. On September 24, 2008, for the first time, Christie's informed Weiss, through Weiss's representative, that Christie's would not honor its $40 Million minimum price guarantee due to the changed climate of the art market.

35. Upon information and belief, Christie's repudiation of the guaranteed minimum price was prompted by the then-emerging worldwide credit crisis and faltering global economy, as embodied by, *inter alia*, the much-publicized September 15, 2008 filing by Lehman Brothers for Chapter 11 bankruptcy protection.

36. In response to Christie's repudiation of the guaranteed minimum price, Weiss's counsel wrote to Christie's demanding that it honor its $40 Million price guaranty.

37. The Property failed to sell at Christie's November 12, 2008 Post War and Contemporary Art Sale.

38. Despite demand therefor, Christie's has failed and refused to honor the

$40 Million price guaranty, and has failed and refused to pay Weiss or WFA the $40 Million guaranteed price, or any part thereof.

### First Claim for Relief
#### (Breach of Contract - Specific Performance)

39. Plaintiff repeats and realleges Paragraphs 1 through 38 hereof, as if fully set forth herein.

40. A valid and enforceable agreement was formed between Plaintiff and Defendant whereby Plaintiff was given a $40 Million minimum price guarantee by Defendant for the Property.

41. At all relevant times, Plaintiff was ready, willing and able to perform its obligations under the agreement.

42. Plaintiff has substantially performed under the agreement and is willing and able to perform its remaining obligations; *i.e.*, to transfer ownership of the Property to Defendant.

43. Defendant is able to perform its obligations, *i.e.*, to pay Plaintiff the $40 Million minimum price guarantee for the Property, and it lies within Defendant's capability to comply with the Court's direction for affirmative relief.

44. Defendant repudiated and breached the agreement by reneging on the $40 Million minimum price guarantee and has breached the agreement by failing and refusing to pay Plaintiff the amounts due and owing under the minimum price guarantee.

45. Plaintiff has no adequate remedy at law in that money damages would be inadequate to protect the expectation interest of Plaintiff, which has been injured by Defendant's breach of contract.

46. Compelling Defendant's performance of the agreement will not result in

A/72845390.5/0202038-0000335526

undue hardship.

## Second Claim for Relief
### (Breach of Contract - Damages)

47. Plaintiff repeats and realleges Paragraphs 1 through 46 hereof, as if fully set forth herein.

48. A valid and enforceable agreement was formed between Plaintiff and Defendant whereby Plaintiff was given a $40 Million minimum price guarantee by Defendant for the Property.

49. At all relevant times, Plaintiff was ready, willing and able to perform its obligations under the agreement.

50. Plaintiff has substantially performed all of its obligations under the agreement.

51. Defendant repudiated and breached the agreement by reneging on the $40 Million minimum price guarantee and has breached the agreement by failing and refusing to pay Plaintiff the amounts due and owing under the minimum price guarantee.

52. As a result of Defendant's breach of the agreement, Plaintiff has been damaged in an amount to be determined at trial.

A/72845390.5/0202038-0000335526

## Request for Relief

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

(i) on Plaintiff's First Claim for Relief, ordering Defendant to pay Plaintiff $40 Million, plus interest at the legal rate, in exchange for transfer of ownership of the Property to Defendant;

(ii) on Plaintiff's Second Claim for Relief, awarding Plaintiff damages in an amount to be determined at trial; and

(iii) awarding Plaintiff such other and further relief as the Court deems just and proper.

## Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: New York, New York
March 20, 2009

BINGHAM McCUTCHEN LLP

By: *Timothy J. Stephens*
Timothy J. Stephens

Robert M. Dombroff
Timothy J. Stephens
BINGHAM McCUTCHEN LLP
399 Park Avenue
New York, New York 10022-4689
(212) 705-7000
Robert.Dombroff@Bingham.com
Timothy.Stephens@Bingham.com

*Attorneys for Plaintiff*
*Weiss Family Art (Bacon) LLC*

-10-